UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**AVTONOM MARTUSHEV** and<br>**TATANIA MARTUSHEV**,<br><br>Debtors. | Case No. **09-60507-7** |
| **DARCY M. CRUM**,<br><br>Plaintiff.<br><br>-vs-<br><br>**ELIZAVETA MARTUSHEV**,<br><br>Defendant. | Adv No. **10-00034** |

**MEMORANDUM OF DECISION**

At Butte in said District this 17th day of December, 2010.

In this adversary proceeding brought by the Plaintiff/Trustee Darcy M. Crum to recover alleged fraudulent transfers by the Debtors to the Defendant under 11 U.S.C. § 548(a), and to avoid a preferential transfer to Defendant under 11 U.S.C. § 547, the Plaintiff has filed a Motion for Summary Judgment (Docket No. 10), including a Statement of Uncontroverted Facts. Defendant Elizaveta Martushev ("Elizaveta") admits the transfers in her answer, but denies liability under §§ 547 and 548, and objects to Plaintiff's Motion. Both sides have filed briefs, which have been reviewed by the Court together with the record and applicable law. This matter is ready for decision. For the reasons set forth below the Court denies Plaintiff's Motion, and finds that Plaintiff failed to satisfy her burden to show an absence of genuine issue of material

1

fact under F.R.B.P. 7056 (applying Fed. R. Civ. P. 56 in adversary proceedings).

The parties admit that this Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334 and 157.  This is a core proceeding to determine, avoid, or recover a fraudulent transfer under 28 U.S.C. § 157(b)(2)(H) and § 548(a)(1)(B), and to determine, avoid and recover a preference under § 157(b)(2)(F) and § 547(b).  This Memorandum of Decision includes the Court's findings of fact and conclusions of law with respect to the Plaintiff's Motion, as provided under F.R.B.P. 7052.

## FACTS

The Debtors filed a voluntary Chapter 7 petition on April 1, 2009, and filed their Schedules and Statement of Financial Affairs ("SOFA") on April 20, 2009.  Debtors' Summary of Schedules lists total assets in the sum of $1,111,690.00, including real property valued at $1,055,000, and total liabilities of $1,910,283.96.  Elizaveta is listed on the SOFA in response to question 3c ("Payments to creditors") as the Debtors' daughter-in-law who received a payment in the sum of $338.00 on April 22, 2008, with $0.00 still owing.  Elizaveta also is listed in response to question 10 ("Other transfers") as receiving transfers from Debtors in the sum of $1,000 on 10/3/2008, $10,000.00 on 9/9/2008, $338.00 on 4/22/2008, $376.00 on 2/29/2008, and $100.00 on 1/30/2008.  The Plaintiff was added to the case as Trustee on April 16, 2009.  A discharge of Debtors was entered on August 18, 2009.

Plaintiff commenced this adversary proceeding by filing a complaint on March 31, 2010.  With respect to the First Claim of the complaint the prayer for relief requests an order avoiding and fraudulent transfers to Elizaveta and to turn over the property transferred "or its reasonable value in the amount of $11,714.00" plus costs; and with respect to the Second Claim prays to

avoid the preferential transfer and order Defendant to pay the Trustee $338.00 plus costs. Elizaveta filed an answer denying liability and prays that Plaintiff take nothing. Plaintiff filed her Motion for Summary Judgment, combined with a separate Statement of Uncontroverted Facts and brief.

Plaintiff's Motion (Dkt. 10) contains the following Statement of Uncontroverted Facts contains the following alleged facts as pages 2-4:

1. Debtors filed the petition in their bankruptcy case on April 1, 2009. Main Docket #1; Discovery Responses (attached [to Dkt. 10] as Exhibit 1), Request for Admissions #2, Answer.

2. Plaintiff Darcy M. Crum is the duly qualified and acting Trustee in this case. Main Docket #8; Discovery Response, Admission #1 (Ex. 1.)

3. Plaintiff filed the Complaint in this adversary proceeding on March 31, 2010. Main Docket #50.

4. Defendant Elizaveta Martushev filed her Answer on September 3, 2010. AP 10-00034 Docket #5.

5. Defendant is the daughter-in-law of Debtors. Main Docket #14, Statement of Financial Affairs, ¶ 3.c (Payments to creditors-All debtors), p. 28.

6. In the two years immediately before this case was filed, Debtors transferred money to Defendant without receiving value, as follows: $1,000.00, October 3, 2008; $10,000.00, September 9, 2008; $376.00, February 29, 2008; $338.00, April 22, 2008. Main Docket #14, Statement of Financial Affairs, ¶ 10 (Other transfers), p. 32. *See also* Discovery Responses (Ex. 1), Requests for Admissions #6, Answer.

7. On September 4, 2008, five days before the largest transfer referred to ¶ 6, Debtors borrowed $45,000.00 from First Security Bank, deposited part of the loan proceeds into Debtors' bank account, and then transferred $10,000.00 directly to Defendant. Neither Defendant nor her husband, Alex Martushev, was a party to the promissory note. Discovery Responses (Ex. 1), Interrogatory #1, Answer; Promissory Note (September 4, 2008), attached to Defendant's Discovery Responses.

8. Defendant's property was not committed as security for the promissory note of September 4, 2008. Deed of Trust (September 11, 2008) and Warranty Deed (August 8, 2007) attached to Defendant's Discovery Responses (Ex. 1).

9. On April 22, 2008, in the one year immediately before this case was filed, Debtors made full payment on a $338.00 antecedent debt to Defendant, an insider. Main Docket #14, Statement of Financial Affairs ¶ 3.c (Payments to creditors – All debtors), p. 28; Answer ¶ 4; Discovery Responses (Ex. 1), Request for Admissions #8, Answer.

10. The transfer enabled Defendant to recover more than she would have received as a creditor if (a) the bankruptcy case were a case under Chapter 7 of Title 11, U.S.C., (b) the transfer had not been made; and (c) the Defendant received payment of her debt to the extent provided by the provisions of said Title 11. Discovery Responses (Ex. 1), Request for Admissions #9, Answer.

11. Debtors scheduled the value of their secured assets at $1,055,000.00 and of personal property at $56,960.00. Main Docket, #14, Summary of Schedules, p.1.

12. Debtors claimed exemptions for assets totaling $178,494.00 Main Docket #14, Schedule C, p. 10.

13. Debtors listed secured debts of $1,192,972.00. Main Docket, # 14, Summary of Schedules, p. 1.

14. Debtors listed unsecured debts of $717,311.96. Main Docket # 14, Summary of Schedules, pp. 1.

Attached to Plaintiff's Motion are Defendant's discovery responses. Although Defendant admitted receiving the transfers in the sums of $11,714.00 and $338.00, it first must be noted that the $338.00 transfer dated 4/22/2008, is included in both § 547 and § 548 claims. Next, Defendant denied Request for Admission No. 4 which asked her to admit that Debtors received no consideration in exchange for the transfers. She denied Request for Admission No. 5 which asked her to admit that the Debtors were insolvent or became insolvent at the time of and as a result of the transfers. She denied Request for Admission No. 7 which asked her to admit that the transfers of $11,714.00 were fraudulent and may be avoided under § 548.

4

In her answer to Interrogatory No. 1 Elizaveta explained in detail why the $10,000.00 transfer to her was not fraudulent, because the $10,000.00 was from a $45,000 loan which was secured by property jointly owned by the Debtor Avtonom Martushev and his son and Defendant's husband Alexsey Martushev[1] ("Alex").  Defendant contends that the $10,000 transfer to her "was from a property interest owned by her husband and not from property of the Debtors and therefore was not a fraudulent transfer."  With respect to the other transfers Defendant states that there was consideration, and the transfers were for the benefit of the Debtors and other family members and it was a common practice between them to cover expenses and be reimbursed.  With respect to the element of insolvency, Defendant stated in her answer to Interrogatory No. 1 that the real estate market in Ravalli County in 2008 and 2009 was marked by declining values, and thus Debtors' insolvency in 2008 is uncertain.

Defendant filed a Statement of Genuine Issues of Material Fact (Dkt. 15) setting forth the following:

> I. The transfer of $10,000.00 complained of in the Complaint was not a transfer of the Debtors and did not reduce the value of their estate to the prejudice of creditors in anyway whatsoever.  Moreover, it was not a payment on an antecedent debt, and if it is a transfer there was consideration given in that defendant's husband pledged property that he owned to secure a loan obtained by the debtors.
>
> 1. Defendant is married to Alexsey ("Alex") Martushev who is the adult son of the Debtors and was a partner with his father Avtonom ("Tom") Martushev in Tomka and Sons, Inc.  See answer to Interrogatory No. 1[.]
>
> 2. Tom and Alex jointly owned a parcel of real property in Ravalli County deeded to them on August 8, 2007.  A copy of the deed is attached to the discovery responses and is pages 14-15 of docket no. 10-1[.]

---

[1] Both names are on the deed of trust attached to Dkt. 10.  However, the promissory note is signed by both Debtors, not by their son Alex.

5

3. On September 4, 2008, the Debtors signed a promissory note payable to First Security Bank for $45,000.00. See pages 6-7 of docket 10-1.

4. Said note was secured by a Deed of Trust against the property mentioned in paragraph 2 and that Deed of Trust was signed by both Alex and Tom on September 9, 2008. See pages 8-13 of docket no. 10-1.

5. On September 9, 2008, $29,463.67 was deposited in the Debtors' account at First Security Bank. See page 17 of docket 10-1, the top credit slip. See also page 18 of docket 10-1 which contains a copy of the bank's cashiers check and a copy of the deposit slip for the Debtors' account. In addition, on that day $12,000 was deposited into the account of Tomka & Sons. See page 17 of docket 10-1, second credit slip. Further, Tom was given additional credit for $3,204.20. See page 17 of docket 10-1.

6. On September 9, 2008, Debtors wrote a check for $10,000.00 to the defendant, which is the transaction complained of in this proceeding. See page 16 of docket no. 10-1.

7. As a result of the payments to Tomka and Sons and to the defendant, Alex and the defendant received $22,000.00, or less than one-half, of the proceeds from the loan secured by property in which Alex held a joint interest.

II. The other small payments complained of are reimbursements for expenses covered by defendant and her husband and thus there was consideration, and two such payments were for less than $600.00.

1. See the answer to interrogatory no. 1. Page 19 of docket 10-1 is the check for $1,000 dated October 3, 2008. Further the $376.00 payment was more than 1 year before the date of filing, which was on April 1, 2009.

III. Plaintiff has produced no evidence of insolvency and is asking the Court to speculate as to property values.

1. The schedules, which were filed on April 20, 2009, indicate asset value of $1,111,690.00 and debts totaling $1,910,283.96.

2. Schedule A reflects that most of the Debtors' asset value is in real estate, $1,055,000.00, all of which is located in Ravalli County, Montana.

3. Plaintiff has offered no evidence of the value of the real estate at the time of any of the transfers complained of.

**SUMMARY JUDGMENT**

Summary judgment is governed by F.R.B.P. 7056. Rule 7056, incorporating FED.R.CIV.P. 56(c), states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

> If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide*, 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id*.

8

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

## DISCUSSION

### I. Fraudulent Transfers – § 548(a).

The Plaintiff's First Claim seeks recovery of $11,714 as fraudulent transfers under § 548(a). A trustee can "avoid any transfer of an interest of the debtor in property . . . if the debtor . . . received less than a reasonably equivalent value in exchange for such transfer . . . and was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer ...." § 548(a)(1)(B)(ii)(I); *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 596 (9th Cir. 2004).

Plaintiff's brief included in her Motion argues that the transfers are shown by Debtors' SOFA, which show no value received for any of them, and Plaintiff dismisses Defendant's explanation of the $10,000 transfer from the $45,000 loan as "convoluted but unpersuasive." Elizaveta responds that the Plaintiff has not satisfied her burden for summary judgment, and argues that the Defendant and her husband received less of the proceeds from the $45,000 loan

9

than they were entitled based upon Alex's joint ownership in the property pledged as collateral for the $45,000 loan from First Security Bank. Defendant argues that she and her husband gave the Debtors value in exchange for the $10,000 transfer in the form of Alex's signature on the Deed of Trust. With respect to the other transfers Defendant contends that they were for consideration given because she paid Debtors' expenses and they reimbursed her.

In her reply the Plaintiff argues that the $10,000 transfer was fraudulent because neither Defendant nor her husband signed the promissory note. Plaintiff further argues that Defendant's statement that the $10,000 transfer was not a payment on an antecedent debt establishes that Debtors received less than a reasonably equivalent value in exchange under § 548(a)(1)(B)(i). Of course, payment on an antecedent debt is not an element in § 548(a)(1)(B), but rather under § 547(b). Defendant's statement of fact above states plainly that if it was a transfer, consideration was given.

Hon. Terry L. Myers, U.S. Bankruptcy Judge for the District of Idaho, explained a two-step process to determine whether a transfer was for a reasonably equivalent value. *Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 441 (Bankr. D. Idaho 2008). First it must be determined that the debtor received value, which is defined for purposes of § 548 as "property, or the satisfaction or securing a present or antecedent debt of the debtor." *Id.*, quoting *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 595 (9th Cir. 1991). Second the court must determine whether that value was reasonably equivalent to what the debtor gave up, which is largely a factual question to which latitude is given to the trier of fact. *Id.* In order to determine whether a fair economic exchange has occurred the court must analyze all the circumstances surrounding the transfer. *Id., citing* 5 COLLIER ON BANKRUPTCY, ¶ 548.05[1][b]

at 548-35 (Alan N. Resnick & Henry J. Sommer eds., rev. 15th ed. 2007).  The determination of reasonable equivalence must be made as of the time of the transfer.  *Jordan*, 392 B.R. at 441; *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546, 114 S.Ct. 1757, 128 L.Ed.2nd 556 (1994).

Whether a debtor received a reasonably equivalent value is analyzed from the point of view of the debtor's creditors, because the aim is to allow avoidance of only those transfers that result in a diminution of a debtor's prepetition assets.  *Jordan*, 392 B.R. at 441 *Hopkins v. D.L. Evans Bank (In re Fox Bean Co.)*, 287 B.R. 270, 281 (Bankr. D. Idaho 2002) (citing *Roosevelt v. Ray (In re Roosevelt),* 176 B.R. 200, 206, 208 (9th Cir. BAP 1994**).**  The concept of reasonably equivalent value is fundamentally one of common sense, and a party receives reasonably equivalent value if it gets roughly the value it gave.  *Jordan*, 392 B.R. at 441-42.  Reasonable equivalence can include the elimination of claims or litigation.  *Id.* at 442, 443, citing *United Energy*, 944 F.2d at 595.

Based on Elizaveta's discovery responses denying that no consideration was given for the $10,000, the pledge by Defendant's husband of his interest in real property as collateral for the $45,000 from which the $10,000 was paid to the Defendant, and that the other alleged fraudulent transfers were merely reimbursement for routine payment of Debtors' costs, the Court finds that the Plaintiff has failed to satisfy her burden of proof for summary judgment on the issue of reasonable equivalence.

Plaintiff contends that Defendant was not a party to the $45,000 loan, so her husband's interest in the collateral is not material, and cites MONT. CODE ANN. § 40-2-201 and -202 that Defendant and Alex have separate property despite being husband and wife.  However, Plaintiff failed to establish whether the $10,000 was necessary for the Defendant and Alex to support each

other out of their property as required under § 40-2-102, which is a specific exception included in § 40-2-201. The Court disagrees with Plaintiff's contention that Alex's property pledge is not a material fact, because the Court believes that the fact is such that a rational or reasonable jury might return a verdict in the Defendant's favor based on that evidence. *T.W. Elec. Serv.*, 809 F.2d at 631.

With respect to the other alleged fraudulent transfers, which Defendant contends were reimbursement for payment of Debtors' debts in accordance with their usual practice, transfers in payment of antecedent debts may constitute reasonably equivalent value under § 548(a)(1)(B)(i). *Jordan*, 392 B.R. at 441-42, citing *United Energy*, 944 F.2d at 595. Based on the discovery responses, the Court concludes that Plaintiff has not satisfied her burden of proof for summary judgment that the Debtors did not receive a reasonably equivalent value under § 548(a)(1)(B)(i).

After determining reasonable equivalence, the Plaintiff must show that the Debtors were insolvent on the date the transfers were made or became insolvent as a result of such transfers. *In re Lewis*, 401 B.R. 431, 437 (Bankr. C.D. Cal. 2009). Under the applicable "balance sheet" test debtors are insolvent when their liabilities exceed their assets. *Id.* at 437 n.9 (quoting *Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.)*, 96 B.R. 275, 277 (9th Cir. BAP 1989)**.** Section 101(32) of the Bankruptcy Code defines "insolvent" to mean, with respect to individuals, "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of – (i) property transferred, concealed, or removed with intent to hinder, delay or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title ...." *Lewis*, 401 B.R. at 437.

The Plaintiff urges this Court to make an inference that the transfers were made to Elizaveta during a period when the Debtors were insolvent. Plaintiff argues that the Debtors were insolvent on the date they filed their bankruptcy petition, and that applying the same values roughly seven months earlier to the date of the transfers would be reasonable. Plaintiff also argues that Debtors failed to provide or withheld information in their Schedules regarding the dates each debt was incurred. Because of those deficiencies, Plaintiff argues, the Court should conclude from Debtors' Schedules that based on the scheduled values of assets and liabilities that they were insolvent at the time of the transfers seven months earlier.

However, in resolving summary judgment motions the trial court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997). Elizaveta denied Request for Admission No. 5 that the Debtors were insolvent or became insolvent as a result of the transfers, and her response to Interrogatory No. 1 cites the declining real estate market and valuations during 2008 and 2009, when the transfers took place roughly 7 months before the petition date.

In the Ninth Circuit a dispute is genuine if sufficient evidence exists for a reasonable fact finder to hold in favor of the non-moving party, and a fact is material if it might affect the outcome of the case. *Far Out Prods, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby*, 477 U.S. at 248-49). Applying this standard, the fact of insolvency is material since it is one of the specific factors required to be proven for Plaintiff's claim based on § 548(a)(1)(B)(ii)(I). It must also be noted that the Debtors are not defendants in this adversary proceeding, Elizaveta is, and it seems unfair at this stage of this proceeding to make an inference

13

against Elizaveta based on the Debtors' Schedules[2].

The Court concludes, based upon the general decline in the real estate market during the period in question, that sufficient evidence exists for a reasonable fact finder to hold in favor of the non-moving party on the issue of insolvency, so a genuine issue of material fact exists with respect to insolvency. Therefore the Plaintiff's Motion with respect to the First Claim must be denied.

**II. Preference – § 547(b).**

Plaintiff's Second Claim seeks to recover the transfer of $338 which occurred on April 22, 2008, as a preference under § 547(b) as well as under § 548(b) above. The Plaintiff has the burden of proving the avoidability of transfers under § 547(b). 11 U.S.C. § 547(g). Section 547(b) authorizes the trustee to avoid "any transfer of an interest of the debtor in property", which the Ninth Circuit explained as follows:

> The Bankruptcy Code permits a trustee to avoid any pre-bankruptcy transfer of a debtor's assets if the transfer: 1) is to or for the benefit of a creditor; 2) is for an antecedent debt owed by the debtor before the transfer; 3) is made while the debtor was insolvent; 4) is made within 90 days of the bankruptcy filing; and 5) enables the creditor to receive more than such creditor would have if the debtor liquidated and distributed the estate to all creditors 11 U.S.C. § 547(b)(1-5).

*In re Food Catering & Housing, Inc.*, 971 F.2d 396, 397 (9th Cir. 1992).

---

[2]With respect to the Trustee's argument that Debtors withheld information from their Schedules and made a calculation of insolvency impossible, the Court notes that the a Discharge of the Debtors was entered in the main case on August 18, 2009. The Trustee did not seek denial of Debtors' discharge under 11 U.S.C. § 727(a) based upon their withholding or concealment of information, or false oaths, in their Schedules.

*See also In re Powerine Oil Co.*, 59 F.3d 969, 971-72 (9th Cir. 1995), *cert. denied*, *Koch Oil Co. v. Committee of Creditors Holding Unsecured Claims Against Powerine Oil Co.*, 516 U.S. 1140, 116 S.Ct. 973, 133 L.Ed.2d 893 (1996). Section 547(b)(4)(B) extends the period from 90 days to 1 year if the creditor at the time of the transfer was an insider, and Elizaveta does not appear to contest that she is an insider as Debtors' daughter-in-law, as defined at 11 U.S.C. § 101(31)(A)(i).

Defendant's responses to Requests for Admissions Nos. 8 and 9 admit some of the elements of § 547(b), *viz.,* § 547(b)(1), (2), (4), and (5), but Defendant denies that the $338 transfer on April 22, 2008, was made while the Debtors were insolvent which is a required element under § 547(b)(3). Above, discussing § 548, the Court found that Plaintiff failed to satisfy her burden under Rule 56 to show an absence of genuine issue of material fact with respect to the issue of insolvency. The same reasoning applies to deny Plaintiff's Motion for Summary Judgment under § 547(b)(3). The $338 transfer on April 22, 2008, took place almost a year prior to the petition date of April 1, 2009, and Plaintiff's reliance on real estate values on the petition date, after almost a year of what may be shown at trial to be a declining real estate market in Ravalli County, falls short of satisfying her burden for summary judgment[3].

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334 and 157.

---

[3]Defendant argues that the preference is not avoidable under § 547(c)(8) because it is for less than $600.00. It is not necessary to decide this issue at this time. However, § 547(g) places the burden of proving the nonavoidability of a transfer under § 547(c) on the creditor. Thus, Defendant has the burden of proving at trial that these are Debtors whose debts are primarily consumer debts in order for § 547(c)(8) to apply.

2.  This is a core proceeding to determine, avoid, or recover fraudulent transfers under 28 U.S.C. § 157(b)(2)(H) and § 548(a)(1)(B), and to determine, avoid and recover a preference under § 157(b)(2)(F) and § 547(b).

3.  Plaintiff failed to satisfy her burden to show an absence of genuine issue of material fact under F.R.B.P. 7056 (applying Fed. R. Civ. P. 56) on the issues of whether Debtors received a reasonably equivalent value in exchange for the transfers, and whether Debtors were insolvent on the dates the transfers were made under 11 U.S.C. § 548(a)(1)(B), and under § 547(b)(3).

**IT IS ORDERED** a separate Order shall be entered in conformity with the above, denying Plaintiff's Motion for Summary Judgment.

> BY THE COURT
>
> /s/ Ralph B. Kirscher
> HON. RALPH B. KIRSCHER
> U.S. Bankruptcy Judge
> United States Bankruptcy Court
> District of Montana